UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Michael Medeiros
And Nikki Medeiros,
        Plaintiffs

        v.                                  Case No. 22-cv-189-SM-AJ
                                            Opinion No. 2025 DNH 071

Howard P. Fairfield, LLC,
        Defendant

**O R D E R**

On June 21, 2021, Michael Medeiros was operating his
motorcycle on U.S. Route 119 in Rindge, New Hampshire.  While
within a lawful passing zone, Medeiros navigated into the left
lane and attempted to pass a farm tractor owned by the Town of
Rindge.  Unfortunately, Medeiros failed to appreciate that the
tractor's left turn signal was on and the operator was preparing
to turn into the driveway of a local business.  As the tractor
began its left turn into the driveway (and into Medeiros's path
of travel), Medeiros applied his brakes but was unable to avoid
colliding with the tractor.  He suffered severe injuries, was
transported by helicopter to a trauma center, and eventually
suffered a partial amputation of his left leg below the knee.

Medeiros and his wife, Nikki, brought this action against several defendants, alleging that each was, in some way, at least partly to blame for the accident.  Those defendants included the tractor's original manufacturer, the dealership that sold it, the current owner of the tractor, and the tractor's driver.  Their claims against all defendants except one have been resolved.  What remain are four claims against the tractor's original owner, Howard P. Fairfield, LLC: (1) negligence; (2) breach of express warranties; (3) strict liability; and (4) loss of consortium.  Pending before the court is Howard P. Fairfield LLC's motion for summary judgment, in which it asserts that there are no genuinely disputed material facts and it is entitled to judgment as a matter of law. Plaintiffs object.

For the reasons discussed, that motion for summary judgment is granted.

## Standard of Review

When ruling on a motion for summary judgment, the court is "obliged to review the record in the light most favorable to the nonmoving party, and to draw all reasonable inferences in the nonmoving party's favor."  Block Island Fishing, Inc. v. Rogers, 844 F.3d 358, 360 (1st Cir. 2016) (citation omitted).  Summary

judgment is appropriate when the record reveals that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In this context, a factual dispute "is 'genuine' if the evidence of record permits a rational factfinder to resolve it in favor of either party, and 'material' if its existence or nonexistence has the potential to change the outcome of the suit."  Rando v. Leonard, 826 F.3d 553, 556 (1st Cir. 2016) (citation omitted).  When material facts are genuinely disputed, such a dispute must be resolved by a trier of fact, not by the court on summary judgment.  See, e.g., Kelley v. LaForce, 288 F.3d 1, 9 (1st Cir. 2002).

When objecting to a motion for summary judgment, "[a]s to issues on which the party opposing summary judgment would bear the burden of proof at trial, that party may not simply rely on the absence of evidence but, rather, must point to definite and competent evidence showing the existence of a genuine issue of material fact."  Perez v. Lorraine Enters., 769 F.3d 23, 29–30 (1st Cir. 2014).  In other words, "a laundry list of possibilities and hypotheticals" and "[s]peculation about mere possibilities, without more, is not enough to stave off summary judgment."  Tobin v. Fed. Express Corp., 775 F.3d 448, 451–52

(1st Cir. 2014).  See generally Anderson v. Liberty Lobby, Inc.,
477 U.S. 242, 249 (1986).


## Background

I.    The Accident.

On June 21, 2021, at around 1:30 in the afternoon, Medeiros
was riding his motorcycle east on U.S. Route 119 in Rindge, New
Hampshire.  It was a clear and sunny day.  In front of him was a
passenger vehicle being driven by William Colby and a farm
tractor being driven by Robert Knight, an employee of the Town
of Rindge.  All vehicles were traveling at or below the 40 mile-
per-hour speed limit (indeed the tractor seems to have had an
upper speed limit of approximately 25 miles per hour).[1]


The three vehicles were in a posted passing zone and
Medeiros decided to overtake the slower-moving traffic ahead of
him.  When he saw no oncoming traffic, he activated the turn
signal on his motorcycle, entered the left lane, and passed Mr.
Colby's car.  He then attempted to pass the tractor.  Meanwhile,
the tractor's operator was preparing to turn left into the

---

[1]    See Bill of Sale from Diamond Mowers to HPF, Exhibit E to
Defendant's Memorandum (document no. 73-5) at 2 (describing the
tractor as having a "40 KPH transmission").

driveway of a gas station and had activated the tractor's left turn indicator.

Unfortunately, Medeiros didn't realize that the tractor's turn signal was on and began his effort to pass.  At about the same time, the operator of the tractor began his left turn into the gas station.  Medeiros applied the brakes on his motorcycle but was unable to avoid colliding with the tractor.  He suffered severe injuries including a partial amputation of his left leg below the knee.

The police report completed by an officer of the Rindge Polie Department included that following sketch of the accident:



According to Medeiros, several flashing lights on the top
of the tractor made it difficult for him to quickly and easily
recognize that the tractor's turn signal had been activated.
Consequently, he says he didn't realize that the operator of the
tractor planned to turn left immediately prior to the accident.
Mr. Colby (the operator of the passenger vehicle), on the other
hand, testified that despite the flashing beacon lights on the
tractor, he had no trouble discerning the fact that the
tractor's operator had activated his left turn indicator prior
to beginning his turn into the gas station driveway.

II.   The Tractor.

The tractor at issue in this case is a New Holland TS6.110
Series II.  It was manufactured by CNH Industrial America, LLC
in or around June of 2014.  During the manufacturing process,
CNH equipped the tractor with several indicator lights: red
lamps on the left and right fenders serve as taillamps and brake
lights, while amber lights mounted on the underside of the cab's
roof on the left and right sides serve as turn signals and
hazard lights.  Finally, above and slightly inboard of the amber
turn indicators are two white work lights that, when activated,
illuminate the area around the rear of the tractor (the work
lights were not illuminated at the time of the accident).
According to CNH, all of those original lights conform with

6

applicable law and industry standards.  Their presence and necessity are not at issue.

In October of 2014, CNH sold the tractor to Diamond Motors, an independent authorized dealer of CNH Industrial products.  A few months later, in January of 2015, Diamond Motors sold the tractor in new condition to the defendant, Howard P. Fairfield, LLC ("HPF"), a provider of public works maintenance products, parts, and services in New England.  HPF incorporated the tractor into its fleet of rental equipment that it leased to state and local municipalities for government use.

At some point shortly after purchasing the tractor, HPF installed two orange "beacon lights" on top of the tractor's roof.  Then, about two years later (in March of 2017), HPF sold the used tractor (with the beacon lights still in place) to the Town of Rindge, New Hampshire, in "as is" condition. Specifically, the bill of sale provided that:

> Buyer understands that the used equipment described herein (the "Equipment") has been used by Seller and/or by persons other than Seller.  Buyer understands the Equipment is sold "as is, where-is" with no implied, expressed, written or oral warranties, representations, or guarantees of any kind, nature or type whatsoever from or on behalf of Seller.

HP Fairfield Used Equipment Statement, Exhibit J to Defendant's Memorandum (document no. 73-10) at 4.  See also Id. at 6 (noting that the Town was purchasing the tractor "as is, as seen, no warranty").

III. <u>The Beacon Lights</u>.

As noted above, after HPF purchased the tractor from an authorized dealer it installed two orange beacon lights on the tractor's roof.  Those beacon lights are the subject of the parties' dispute.  HPF claims that they provided an added measure of safety and made the tractor more visible to other motorists when the tractor was on or near a public road. Plaintiffs, on the other hand, say that by installing the orange beacon lights, HPF created a visually distracting and confusing array of flashing lights on the top of the tractor.  That, in turn, prevented Medeiros from quickly and easily recognizing that the operator of the tractor had activated his turn indicator and intended to turn left.  And, because he didn't realize the operator intended to turn left, Medeiros believed it was safe to pass the tractor on the left.

In support of their opposition to summary judgment, plaintiffs have submitted the report of their expert, who has opined that:

> [T]he aftermarket beacon lights installed by HP
> Fairfield were unnecessary and not required by the
> manufacturer or any industry standard.  It is my
> considered opinion that HP Fairfield should not have
> installed the aftermarket beacon lights because they
> caused confusion concerning the intended path of
> travel of the Tractor.
>
> It is my considered opinion that when the orange
> aftermarket beacon lights continue to flash while the
> amber turn signal indicators are activated [that]
> causes confusion to other motorists following the
> Tractor in that it is difficult to discern the
> Tractor's intended path of travel.  When the turn
> signal indicators are activated, instead of turning
> off the flashing beacon lights, the beacon lights
> continue to flash.  Additionally, the turn signal on
> the opposite side stops flashing and becomes a sold
> light (doesn't flash) and only the left turn signal
> indicator continues to flash.  This results in the two
> aftermarket beacon lights flashing at the same time as
> one of the two amber lights are flashing, causing
> confusion to other motorists as to what the numerous
> flashing lights are attempting to signal or indicate.[2]

Report of Steven D. Lyons, Exhibit 2 to Plaintiffs' memorandum

(document no. 75-2) at 4.


Plaintiffs' expert does not identify any specific industry

standards or regulations in support of his opinions.  Nor does

---

[2]    Parenthetically, the court notes that the lighting pattern
described – one flashing amber turn indicator and one steady
amber turn indicator - is consistent with the regulations set
forth in 49 C.F.R. § 562, the Annex to which provides that,
"Turn indicators shall be provided.  When a turn is signaled,
the amber flashing warning lamp(s) opposite the direction of
turn shall become steady burning."

his report reference the tractor's operating manual (which
contemplates the installation of beacon lights).  Nor does his
report cite any studies about factors impacting human perception
of lighting patterns, or contain any discussion about the
relative luminosity of the tractor's lights and how that might
have affected the ability of third parties to distinguish
between the directional indicators and the aftermarket beacon
lights.  The opinions of plaintiffs' expert are, in short,
largely based upon his observations of the tractor, Medeiros's
testimony that he didn't realize the tractor's turn indicator
had been activated, and his personal beliefs.

According to HPF, it was its routine practice to install
"Class 2 beacon lights" on all vehicles in their fleet of rental
equipment to enhance safety and make the equipment more visible.
HPF installed the beacon lights so they would activate
automatically as soon as the tractor was started – without any
intervention from the operator.  That was done, says HPF, to
eliminate any potential operator error or failure to activate
the flashing lights while the tractor was running.

Plaintiffs have submitted the photograph reproduced below,
which shows the various lights on the rear of the tractor.

Plaintiffs have highlighted those lights – including the after-market beacon lights installed by HPF - with various labels.



Plaintiffs' Objection to Motion to Exclude Expert Testimony (document no. 76) at 3.

     Based upon the evidence of record, the following facts relating to the tractor's beacon lights are undisputed:

    1.   Installation of the beacon lights was not
         required by law or regulation, nor were they
         necessary to operate the tractor lawfully on a
         public way.

    2.   Although the tractor's manufacturer (CNH
         Industrial America) did not install the beacon
         lights, it did design and manufacturer the
         tractor specifically to accommodate such lights.
         See New Holland Tractor Operator's Manual
         (document no. 73-7).

So, for example, the tractor's owner's manual notes that a switch to activate the beacon lights is located near the ignition (page 2-5 and 3-23); and wiring to install beacon lights is located under the cab roof (page 4-3); and the 20 Amp fuse for the beacon lights is located at position 20 in the fuse box (page 6-52).

3.  As measured by defendant's expert, the luminosity of the tractor's directional indicator lamps was more than eight times that of the flashing beacon lights (59,333 cd/m$^2$ v. 7,134 cd/m$^2$), thereby making the directional indicators significantly more prominent and easily observed.  <u>See</u> Expert Report of Terence Fischer (document no. 73-14) at 13.

4.  Although Medeiros testified that he was confused by the presence of the flashing beacon lights, William Colby (the operator of the passenger vehicle who witnessed the accident) testified that he recognized when the operator of the tractor activated his left turn indicator light and had no difficulty discerning that the turn indicator was on and operating.  <u>See</u> Deposition of William Colby (document no. 73-4) at 22-23.

5.  The beacon lights themselves, as well as the manner in which they were installed, are permitted by and comply with the regulations set forth in 49 C.F.R. § 562, which "established minimum lighting and marking standards for new agricultural equipment."  49 C.F.R. § 562.1.

6.  The section of those standards addressing the installation of beacon lights on agricultural equipment provides that, "When a rotating beacon or strobe beacon is installed on a machine, it shall conform to SAE J845 Class II (yellow) or ECE  regulation No. 65 (amber)."  The standard further states that, "The beacon(s) shall switch ON independently of the other lamps specified in this standard" – as was done in this case.  <u>See</u> Defendant's Expert Report at 17.

7.   There is no dispute that the beacon lights
     installed on the tractor by HPF comply with those
     requirements.[3]

An illustration from the Annex to those regulations

(which is publicly available) shows the front and rear of a

tractor with either one or two beacon lights installed.  It

is reproduced below and the illustration on the left is

virtually identical to the manner in which HPF installed

the beacon lights in this case.

---

[3]    In 2016 (effective June 22, 2017) the National Traffic
Safety Administration (NHTSA) adopted regulations governing
"Lighting and Marking on Agricultural Equipment."  81 Fed. Reg.
40528-01, 2016 WL 3402959 (June 22, 2016).  Those rules are set
forth in 49 C.F.R. § 562 and apply to "new agricultural
equipment that may be operated on a public road."  49 C.F.R. §
562.5.  While they were not in effect when the tractor was
manufactured (2014), or when HPF installed the beacon lights
(2015), or when HPF sold the tractor to the Town (March of
2017), those regulations do provide useful insight into current
industry standards.  Unfortunately, those regulations simply
incorporate by reference the standards written by an independent
organization – the American Society of Agricultural and
Biological Engineers - and, oddly enough, they are not publicly
available.  See 49 C.F.R. § 562.7 ("New agricultural equipment
that may be operated on a public road must meet the lighting and
marking standards set forth in ANSI/ASAE 279.14 JUL2008,
"Lighting and Marking of Agricultural Equipment on Highways"
(incorporated by reference, see § 562.11).").  Although HPF's
expert references those standards, neither party has provided a
copy to the court.  Importantly, however, plaintiffs do not
dispute the accuracy of defendant's expert's quotations from
those standards or from a related standard, SAE J845 (relating
to the beacon lights themselves).



Association of Equipment Manufacturers, <u>Lighting and Marking of Agricultural Equipment on Highways</u>, Illustrative Guide to ANSI/ASAE 279.18, ANNEX B (Oct. 2019) (available at: <u>https://shop.aem.org/en/AEM%20Safety/aem-safety-products/lighting-and-marking-of-agricultural-equipment-on-highways-guide/</u>).

    As further evidence that the installation of the beacon lights did not violate any duty owed to Medeiros, HPF points to

the report prepared by its expert, Terrence Fischer.  In that

report, Mr. Fischer notes that:

> Research conducted for the North Carolina Department
> of Transportation that studied farm vehicle crashes
> identified several factors that could reduce the
> probability of crash occurrences.  <u>The report
> recommended the installation of flashing beacons on
> farm vehicles to increase their conspicuity</u>.  The
> authors noted that:
>
>> Drivers are accustomed to seeing flashing lights
>> and beacons on vehicles that require special
>> attention.  By requiring these lights on all new
>> equipment sold in North Carolina, over time,
>> nearly all farm vehicles will have flashing
>> lights to further alert drivers to the presence
>> of a slowly moving vehicle that requires special
>> attention.
>>
>> The use of flashing beacons encourages farmers to
>> exceed the minimum standards required by the
>> motor vehicle laws and to retrofit their
>> equipment with a flashing beacon while it is
>> operated on a highway.   This is especially
>> important for farmers who must operate their
>> equipment on roads with high speeds and high to
>> moderate traffic volumes and make crossing
>> maneuvers near horizontal curves.  Crossing
>> maneuvers are left turns onto field access
>> driveways, left turns at intersections, or
>> through movements at intersections.

Report of Terrence Fischer, Exhibit N to Defendant's memorandum

(document no. 73-14) at 18-19 (emphasis supplied).  Again, none

of that is disputed.


HPF's expert concludes by opining that, "the aftermarket

installation of the beacon lights on the CNH tractor was an

industry-recommended safety enhancement that would not have
obstructed Mr. Medeiros's ability to observe and detect the
active turn signal on the tractor.  Additionally, the
aftermarket installation of the beacon lights provided an added
level of safety to the public traveling on the subject
roadways."  Id. at 21.


**Discussion**

I.   Negligence.

       To prevail on their negligence claim against HPF, the
plaintiffs must demonstrate that: (1) the defendant owed Mr.
Medeiros a duty of care; (2) the defendant breached that duty;
and (3) the breach proximately caused his injuries.  See, e.g.,
VanDeMark v. McDonald's Corp., 153 N.H. 753, 756 (2006).  As the
New Hampshire Supreme Court has recognized,

          The scope of the duty of care imposed upon the
          defendants, however, is limited by what risks, if any,
          are reasonably foreseeable.  Whether a defendant's
          conduct creates a sufficiently foreseeable risk of
          harm to others sufficient to charge the defendant with
          a duty to avoid such conduct is a question of law.

          The concepts of duty and legal causation are closely
          related and must be considered together.  The
          determination of legal duty focuses upon the policy
          issues that define the scope of the relationship
          between the parties.  The relevant inquiry, therefore,
          is whether the plaintiff's interests are entitled to
          legal protection from the defendant's conduct, or at
          the defendant's hands, against the invasion which has
          in fact occurred.  The existence of a duty depends

upon what risks, if any, are reasonably foreseeable
under the particular circumstances.

Macie v. Helms, 156 N.H. 222, 224 (2007) (citations and internal

punctuation omitted).

HPF's argument is simple and straightforward: plaintiffs

have failed to establish that HPF owed Medeiros any duty of care

at all and, even if it did, HPF never breached such a duty.  As

noted above, the existence of a legal duty of care is a question

of law for the court.

As to HPF's assertion that it owed Medeiros no duty of

care, the court disagrees.  It is plain that if HPF modified,

augmented, or removed any safety lighting equipment originally

installed on the tractor by its manufacturer there was a

foreseeable risk to the public that the tractor might become

less visible or that those modifications might make otherwise

clear and commonly-understood light signals confusing and/or

difficult to recognize quickly.  Consequently, HPF had a duty to

make any after-market modifications to the tractor in a non-

negligent manner that: (a) complied with any local, state, or

federal requirements; and (b) did not create an increased risk

of injury either to the operator or to those members of the

public who might foreseeably come into contact with the tractor.

As Justice Cardozo recognized nearly a century ago, "The risk reasonably to be perceived defines the duty to be obeyed." Palsgraf v. Long Island R. Co., 248 N.Y. 339, 344, 162 N.E. 99, 100 (1928). So, for example, if HPF had decided to supplement (or replace) the manufacturer's white work lights on the rear of the tractor, it would have been obligated to do so in a way that any additional or modified lights did not blind operators of vehicles approaching the tractor vehicle from the rear (e.g., by ensuring that the lights were oriented/aimed property; that they couldn't be activated when the tractor was traveling on a public way or that they remained covered when not in use, etc.).

Here, all agree that the lighting on the tractor as originally manufactured met all legally-imposed safety requirements. It was equipped with headlights, turn signals/hazard lights, and tail/brake lights – no alterations or amendments were necessary for the tractor to operate lawfully on a public way. Nevertheless, HPF decided to supplement that lighting by adding the flashing orange beacon lights to increase the vehicle's visibility to passing motorists. But, in so doing, HPF assumed the duty to act in a reasonable manner that did not increase safety risks to those who might foreseeably come into contact with the tractor.

Having determined the existence of HPF's legal duty, the
next step is to resolve whether HPF breached that legal
obligation when it installed the beacon lights.  Typically,
determining whether a legal duty has been breached is a factual
question.  See, e.g., Furbush v. McKittrick, 149 N.H. 426, 432
(2003) ("Though the existence of the defendant's duty to the
plaintiff is a question of law, it is for the fact-finder to
determine whether, under the circumstances of the case, the
defendant breached his duty to exercise reasonable professional
care and that the defendant's breach caused the plaintiff's
harm.") (citations omitted); see also State v. Exxon Mobil
Corp., 168 N.H. 211, 235 (2015) (same); Carignan v. New
Hampshire Int'l Speedway, Inc., 151 N.H. 409, 414 (2004) (same).
Here, however, plaintiffs have pointed to insufficient evidence
to permit a properly instructed trier of fact to reasonably
conclude that HPF breached any duty owed to Medeiros with
respect to the beacon lights.

In support of their claim that HPF was negligent and
proximately caused the accident, plaintiffs rely upon: (a) the
occurrence of the accident itself; (b) Medeiros's testimony that
he doesn't recall seeing the tractor's turn indicator lights and
remembers seeing only flashing lights, see Medeiros Deposition
(document no. 75-9) at 20-21 ("Everything was flashing.  All I'd

seen was flashing up there.  That's all I'd seen."); and (c) the largely unsupported and conclusory statements of their expert, who opined that installation of the beacon lights was not legally required (which all acknowledge) and "caused confusion concerning the intended path of travel of the tractor."  Report of Steven Lyons, Exhibit 2 to Plaintiffs' Memorandum (document no. 75-2) at 4.

HPF, on the other hand, points to evidence that the manufacturer of the tractor plainly contemplated the after-market installation of such beacon lights; the installation of the beacon lights at issue complied with the recommendations set forth in 49 C.F.R. § 562; many states encourage (or even require) the installation of such beacon lights; the beacon lights themselves were significantly less luminous than the tractor's turn indicators (so the turn indicators would be far more prominent to passing motorists keeping a reasonable lookout); the witness to the accident (Mr. Colby) plainly saw that the tractor's turn indicator had been activated; no evidence suggests that the beacon lights themselves were defective in any way; and nothing about the installation of the beacon lights, their wiring, or their location on the tractor was improper, defective, or contrary to any industry standards or local, state, or federal requirements.

HPF also notes that it, its various customers, and the Town of Rindge used the tractor for many years without incident. Plaintiffs, on the other hand, have not introduced evidence of even a single other accident - in New Hampshire or elsewhere - that was caused by, or related to, the presence of flashing beacon lights on a piece of farm equipment.

Given the record presented, there is simply insufficient evidence for a properly instructed jury to reasonably conclude, by a preponderance, that HPF breached any duty of care owed to Medeiros. Michael Medeiros's collision with the tractor was, to be sure, a tragic and unfortunate accident. But, it was just that: an accident. The record is devoid of evidence that it was caused by any negligence on HPF's part. HPF is, therefore, entitled to judgment as a matter of law on plaintiffs' negligence claim.

II.  <u>Breach of Express Warranties</u>.

As noted above, HPF sold the tractor to the Town of Rindge "'as is-where is' with no implied, expressed, written or oral warranties, representations, or guarantees of any kind." Used Equipment Statement (document no. 73-10) at 4. Nevertheless, plaintiffs claim (without citation to any authority) that HPF's

"failure to inform the Town of Rindge that it installed
aftermarket beacon lights . . . created an <u>express</u> <u>warranty</u> as
to the mechanical lighting of the Tractor."  Plaintiffs'
Memorandum (document no. 75) at 12 (emphasis supplied).  The
court disagrees.

Under the Uniform Commercial Code, as adopted by New
Hampshire, express warranties are created in the following
situations:

> (a)   Any <u>affirmation of fact or promise made</u> by the
>       seller to the buyer which relates to the goods
>       and becomes part of the <u>basis of the bargain</u>
>       creates an express warranty that the goods shall
>       conform to the affirmation or promise.
>
> (b)   Any <u>description of the goods</u> which is made part
>       of the <u>basis of the bargain</u> creates an express
>       warranty that the goods shall conform to the
>       description.
>
> (c)   Any <u>sample or model</u> which is made part of the
>       <u>basis of the bargain</u> creates an express warranty
>       that the whole of the goods shall conform to the
>       sample or model.

N.H. Rev. Stat. Ann. ("RSA") 382-A:2-313(a) (emphasis supplied).
As it relates to the beacon lights, plaintiffs have pointed to
no evidence suggesting that any one or more of those
circumstances were present when HPF sold the tractor to the
Town.  Indeed, just the opposite is the case: HPF expressly

disclaimed any express or implied warranties.  <u>See generally</u> RSA
382-A:2:316 ("Exclusion or Modification of Warranties").


    The documents evidencing HPF's sale of the tractor to the
Town plainly reveal that both parties to the transaction
understood that HPF had made no express or implied warranties as
to the tractor's condition or its fitness for a particular
purpose.  Plaintiffs' theory that the circumstances surrounding
that sale and HPF's silence with respect to the beacon lights
somehow gave rise to an "implicit" express warranty is without
legal basis.  As to that count in plaintiffs' amended complaint,
then, HPF is entitled to judgment as a matter of law.


## III. <u>Strict Product Liability</u>.

    Somewhat confusingly, plaintiffs allege that HPF "designed,
manufactured, advertised, distributed, and/or sold the Tractor,
including the beacon lights installed on the roof, with
inadequate warnings and/or in a defective and/or unreasonably
dangerous condition."  Third Amended Complaint at para. 179.  Of
course, HPF did not design or manufacturer the tractor.  It
purchased the tractor, added the beacon lights, used it in its
business for two years (without incident), and then sold it "as
is" to the Town of Rindge.  So ignoring plaintiffs' boilerplate

allegations, it seems they claim that HPF's installation of the beacon lights rendered the tractor unreasonably dangerous.

New Hampshire has adopted the doctrine of strict product liability as expressed in the Restatement (Second) of Torts § 402-A.  See Buttrick v. Arthur Lessard & Sons, Inc., 110 N.H. 36 (1969).  In short, "one who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to strict liability for physical harm thereby caused if, inter alia, the seller is engaged in the business of selling such a product."  Royer v. Cath. Med. Ctr., 144 N.H. 330, 331 (1999) (citation and internal punctuation omitted).[4]

To prevail on a defective product design claim, a plaintiff must establish each of the following four essential elements:

> (1) the design of the product created a defective condition unreasonably dangerous to the user; (2) the condition existed when the product was sold by a seller in the business of selling such products; (3) the use of the product was reasonably foreseeable by the manufacturer; and (4) the condition caused injury to the user or the user's property.

---

[4]    For purposes of plaintiffs' strict product liability claim, HPF does not dispute that it was "in the business" of selling used tractors.  Accordingly, the court takes that fact as established.

Vautour v. Body Masters Sports Indus., Inc., 147 N.H. 150, 153–
54 (2001) (citation omitted).

    With respect to the first element, the plaintiff must
demonstrate that the product is "dangerous to an extent beyond
that which would be contemplated by the ordinary consumer who
purchases it, with the ordinary knowledge common to the
community as to its characteristics." Id. at 154.  That issue
is typically resolved by the jury, by balancing "many possible
factors including the usefulness and desirability of the product
to the public as a whole, whether the risk of danger could have
been reduced without significantly affecting either the
product's effectiveness or manufacturing cost, and the presence
and efficacy of a warning to avoid an unreasonable risk of harm
from hidden dangers or from foreseeable uses." Id.

    Again, however, plaintiffs have pointed to insufficient
evidence in the record to permit a jury to engage in such a
balancing test or to evaluate those enumerated factors.
Plaintiffs simply point to Medeiros's testimony that he didn't
recognize that the tractor's directional light was flashing and
their expert's largely unsupported opinion that the beacon
lights were likely to cause confusion.  There is, for example,

no testimony or evidence about alternate types of lights that could have been used, or different locations they could have been installed, or different manners in which they might have been wired (e.g., to turn off when the directional was activated). Nor is there evidence weighing the relative safety provided by the flashing beacon lights compared to the potential risk that they might confuse members of the public. Nor, as noted above, is there any evidence of even a single other accident having allegedly been caused by, or related to, the presence of flashing beacon lights on a piece of farm equipment.

On the other hand, there is substantial evidence that such lights are widely used on farm equipment; they are recommended (or even required) by many states; the tractor's manufacturer plainly anticipated that aftermarket beacon lights might be installed for safety reasons; and HPF installed the beacon lights on the tractor in full compliance with the regulations set forth in 49 C.F.R. § 562. Given that record, any jury conclusion that the presence of the beacon lights rendered the tractor unreasonably dangerous would be purely (and impermissibly) speculative. Accordingly, HPF is entitled to judgment as a matter of law with respect to plaintiffs' strict product liability claim.

IV.  <u>Loss of Consortium</u>.

Nikki Medeiros's loss of consortium claim depends entirely upon Michael's success on one or more of his claims.  <u>See, e.g.</u>, <u>Guilfoy v. United Servs. Auto. Ass'n</u>, 153 N.H. 461, 463 (2006) ("It is well settled that loss of consortium is a consequential damage derivative of the underlying bodily injury claim."); <u>see generally</u> N.H. Rev. Stat. Ann. 507:8-a.  Because Michael Medeiros cannot, as a matter of law, prevail on any of those underlying claims, HPF is necessarily entitled to judgment as a matter of law with respect to the loss of consortium claim as well.

### Conclusion

For the forgoing reasons, as well as those set forth in defendant's legal memoranda (documents no. 73 and 75), the defendant, Howard P. Fairfield, LLC, is entitled to judgment as a matter of law on all claims against it in plaintiffs' amended complaint.  Accordingly, its Motion for Summary Judgment (**document no. 73**) is granted.  Defendant's Motion to Exclude the Testimony of Plaintiffs' Expert, Steven D. Lyons (**document no. 74**) as well as its Supplemental Motion to Exclude the Testimony of Plaintiffs' Expert (**document no. 84**) are denied as moot.

The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

June 4, 2025

cc:  Counsel of Record